# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MARK A. BASSO,            :

                     :

        Plaintiff,        :

                     :

v.                     :        No. 06cv1507(MRK)

                     :

JOHN E. POTTER,        :

POSTMASTER GENERAL,   :

                     :

        Defendant.     :

## MEMORANDUM OF DECISION

In this case, Plaintiff Mark A. Basso sues Defendant Postmaster General John E. Potter in a three-count Amended Complaint [doc. # 21]. Count One alleges disability discrimination on the basis of alcoholism in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.* ("Rehabilitation Act"). Count Two claims interference with Mr. Basso's rights under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA"). Count Three seeks declaratory relief under 28 U.S.C. § 2201. The parties filed cross-motions for summary judgment in which Mr. Basso sought summary judgment on Counts Two and Three and in which Postmaster General Potter sought summary judgment on all counts of the Amended Complaint. *See* Pl.'s Motion for Summary Judgment [doc. # 41]; Def.'s Motion for Summary Judgment [doc. # 45]. Counsel represented to the Court at oral argument that Count Three is no longer in dispute, and the Court therefore dismisses Count Three of the Amended Complaint [doc. # 21]. For the reasons that follow, the Court DENIES Plaintiff's Motion for Summary Judgment [doc. # 41] and GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment [doc. # 45].

## I.

The facts of this case are relatively straight-forward and largely uncontested.  Mr. Basso was hired by the United States Postal Service ("USPS") effective June 29, 1987.  He held various positions within the USPS, most recently as a full-time mail handler at the Southern Connecticut Processing & Distribution Facility in Wallingford, Connecticut, until he was terminated on February 6, 2004.  Beginning in 1997 and continuing through 1999, Mr. Basso experienced disciplinary problems that included failures in timeliness, attendance, and compliance with instructions.  These disciplinary issues resulted in the USPS issuing three Letters of Warning to Mr. Basso.  Despite the Letters of Warning, Mr. Basso experienced further conduct-related difficulties in 2000.  As a consequence, he entered into an agreement with the USPS in which he agreed to participate in a structured alcohol rehabilitation program and to refrain from "further substance abuse-related misconduct" and "substance abuse-related performance deficiencies after the completion of treatment."  Nevertheless, Mr. Basso continued to demonstrate both conduct- and alcohol-related problems and was therefore issued Notices of Removal in November 2000 and June 2001.  Although the November 2000 Notice of Removal was downgraded to a 14-day suspension, Mr. Basso was placed in off-duty status in June 2001.  He returned to work at the Wallingford Facility in May 2002 under the express terms of a Last Chance Agreement ("LCA") that he executed with the USPS on May 23, 2002.[1]

The LCA recites that the Notice of Removal issued to Mr. Basso in June 2001 was issued for "just cause" and that the LCA constitutes a "last chance" for Mr. Basso to keep his job.  *See* Aff. of

---

[1]  In view of the dismissal of Count Three, Mr. Basso no longer disputes the validity of any provision of the Last Chance Agreement.

Sabrina N. Kiluk in Supp. of Pl.'s Mot. for Summ. J. [doc. # 42] Ex. 3 at 1 [hereinafter Kiluk Aff.].

The agreement provided that the removal action would be held in abeyance for up to two years so

long as Mr. Basso adhered to all of the provisions of the LCA and that if Mr. Basso did not

"rehabilitate himself" or otherwise comply with the agreement's terms, "removal procedures shall

be initiated by the setting of a new effective date of removal." *Id.* The LCA stated that in the event

removal was necessary, the USPS would not be required to provide Mr. Basso with a thirty-day

notice period.

Under paragraph 9 of the LCA, Mr. Basso faced disciplinary action up to and including

removal for such issues as failing to participate in substance abuse treatment, failing to complete pre-

identified treatment, engaging in substance abuse-related misconduct or performance deficiencies,

failing alcohol testing, or failing to meet the attendance and/or documentation requirements under

the LCA. *See id.* at 2-3. Under paragraph 17, Mr. Basso agreed to the following attendance

requirements:

> [Mr. Basso] will not experience more than five (5) unscheduled absences in each year
> of the agreement. In addition, he will not experience more than three (3)
> unscheduled absences in any 6 month period. Should he do so, he will be in violation
> of this Agreement. It is further understood that he will comply with the Labor
> Relations Manual Section 666.81 Requirement for Attendance which states
> "Employees are expected to maintain their assigned schedule and must make every
> effort to avoid unscheduled absences." (An unscheduled absence for the purpose of
> this agreement is any absence not protected by FMLA and not requested and
> approved in advance, utilizing a PS Form 3971, including, but not limited to, Sick
> Leave, Emergency Annual Leave, Leave Without Pay, Tardiness, Short Hits, Lates
> or Failing to Report as Scheduled for Overtime or Holidays.). It is clearly understood
> that unscheduled absences may be approved for pay purposes only.

*Id.* at 4. The parties agreed at oral argument that for purposes of this case, an "unscheduled absence"

under the LCA is any absence not protected by FMLA *or* not requested and approved in advance,

3

utilizing a PS Form 3971.  Paragraph 19 of the LCA recited that Mr. Basso understood that "he must call to notify Management of any unscheduled absences.  Failure to abide by the above will result in the absences being administratively determined and recorded as AWOL."  *Id.* at 4.

Even after signing the LCA, Mr. Basso experienced numerous absences that the Court will address in greater detail later.  Suffice it to say that the dates and asserted reasons for these absences are as follows:  (1) September 20, 2003 for "impingement syndrome," which the USPS classified as absent on overtime ("AOT"); (2) October 27, 28, 29, 30 and 31, 2003 for bronchitis, which the USPS classified as leave without pay ("LWOP") in lieu of sick leave; (3) December 27, 2003 for "subluxation knee," which the USPS classified as AOT; (4) January 23, 2004 for substance abuse, which the USPS classified as absent without leave ("AWOL"); and (5) January 24, 2004 for substance abuse, which the USPS classified as AOT.   As a result, on February 6, 2004, the USPS issued an official notice to Mr. Basso that he had violated the terms of his LCA and would be terminated effective on his receipt of the notice.  *See* Kiluk Aff. [doc. # 42] Ex. 4.  The notice cited Mr. Basso's violation of Paragraphs 1, 3, 4, 9, 17, 19, 20, and 26 of the LCA.  *See id.*  In particular, the notice stated that Mr. Basso violated paragraphs 9 and 17 of the LCA for: (1) exhibiting substance abuse-related deficiencies in violation of subparagraph 9e as a result of his January 23 and 24, 2004 absences that were attributed to drinking; (2) failing to meet his attendance requirements in violation of subparagraph 9h; and, (3) experiencing more than five unscheduled absences in a year and three unscheduled absences in a six-month period – with reference to each of the above-listed absences from September 2003 to January 2004 – in violation of paragraph 17.  Mr. Basso filed a formal complaint with the Equal Employment Opportunity Commission (EEOC) on September 14, 2005, which was dismissed on the ground of untimely EEO Counselor contact.  *See id.* Ex. 25.

4

Mr. Basso then brought this action, in which he claims that he was terminated on the basis of his alcoholism, and further, that each of his absences was FMLA-protected, that the USPS interfered with his rights under the FMLA, and that he was found to have violated his LCA as a result the USPS's interference with his FMLA rights. Postmaster General Potter denies that the USPS engaged in any disability discrimination and further denies that any of Mr. Basso's numerous absences qualified as FMLA leave. Instead, he argues that Mr. Basso violated his LCA and was thus terminated under the express provisions of the May 23, 2002 Last Chance Agreement with the USPS.

## II.

The summary judgment standard is a familiar one. Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the non-movant. *See Anderson*, 477 U.S. at 255;

5

*Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008).  If the moving party carries its burden, the party opposing summary judgment "may not rely merely on allegations or denials."  Fed. R. Civ. P. 56(e)(2).  Rather, the opposing party must "set out specific facts showing a genuine issue for trial." *Id.*  In short, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III.    Rehabilitation Act

Mr. Basso's first claim is that the USPS discriminated against him on the basis of his disability – namely, alcoholism.  As a result, he asserts that the USPS violated the provision of the Rehabilitation Act that states that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."  29 U.S.C. § 794(a).

The Rehabilitation Act provides that complaints of employment discrimination brought under the Act are generally assessed according to the same standards as those under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.* and the provisions of §§ 501 through 504, and § 510, of the ADA, 41 U.S.C. §§ 12201-12204 and 12210.  *See* 29 U.S.C. § 791; *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) ("[U]nless one of the subtle distinctions [between the two acts] is pertinent to a particular case, we treat claims under the two statutes identically."); *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999).  The parties

6

also agree that Mr. Basso's claim of disability discrimination under the Rehabilitation Act is governed by the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See* Def.'s Mem. Supp. Mot. Summ. J. [doc. # 46] at 7 [hereinafter Def.'s Mem.]; Pl.'s Mem. Opp'n to Def.'s Mot. Summ. J. [doc. # 57] at 1 [hereinafter Pl.'s Opp'n]; *see also Regional Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48-49 (2d Cir. 2002). Under this burden-shifting analysis, a plaintiff must establish a *prima facie* case of disability discrimination; if he does so, the burden shifts to the defendant to show through the introduction of admissible evidence a legitimate, non-discriminatory reason for its action. *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). If the defendant satisfies its burden, the plaintiff must then produce evidence showing that the defendant's asserted reason is pretextual and, for claims under the Rehabilitation Act, that the sole reason for defendant's action was unlawful discrimination. *See id.*; 29 U.S.C. § 794.[2]

## A.

In order to establish his *prima facie* case of disability discrimination under the Rehabilitation Act, Mr. Basso must prove that he is an individual with a disability, that he is otherwise qualified to perform his job with or without reasonable accommodation, that he suffered an adverse employment action solely on the basis of his disability, and that his employer receives federal funds. *See* 29 U.S.C. § 794; *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003);

---

[2] After the filing of this case and before oral argument on the parties' cross motions for summary judgment, Congress enacted and the President signed into law the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553, which became effective on January 1, 2009. The parties have not urged the Court to apply the amendments in this case, and have instead relied on the pre-amendment law. Moreover, the amendments primarily relate to the elements of a plaintiff's *prima facie* case, which the Court assumes established for purposes of this motion. *See infra* Part III.A. at 10.

*Regional Econ. Cmty. Action Program, Inc.*, 294 F.3d at 49; *Gilmore v. Univ. of Rochester Strong Memorial Hosp. Div.*, 384 F. Supp. 2d 602, 610 (W.D.N.Y. 2005). The USPS concedes for purposes of this motion that it is subject to the Rehabilitation Act and that Mr. Basso's termination constitutes an adverse employment action. *See* Def.'s Mem. [doc. # 46] at 8. However, the USPS argues that Mr. Basso cannot satisfy his burden with respect to the remaining elements of his *prima facie* case.

Under the Rehabilitation Act, a "disability" includes (1) a physical or mental impairment that substantially limits one or more of the individual's major life activities; (2) a record of such an impairment; or (3) being regarded as having such an impairment. *See* 29 U.S.C. § 791; 42 U.S.C. § 12102(2) (ADA provision). The parties do not dispute that alcoholism may qualify as a disability for purposes of the Rehabilitation Act. *See Regional Econ. Cmty. Action Program, Inc.*, 294 F.3d at 46 ("Alcoholism, like drug addiction, is an 'impairment' under the definitions of a disability set forth in the . . . Rehabilitation Act."). Where the parties disagree is on whether Mr. Basso loses the protection that he might otherwise claim under the Rehabilitation Act because of its current user provision. The USPS argues that Mr. Basso is exempted from the protections of the Act because he is an individual suffering from alcoholism whose "current use of alcohol prevents [him] from performing the duties of the job in question or whose employment, by reason of such current alcohol abuse, would constitute a direct threat to property or the safety of others." 29 U.S.C. § 705(20)(C)(v); *see Gilmore*, 384 F. Supp. 2d at 611 ("[C]urrent . . . use disqualifies a person from protection under these statutes."); *Robertson v. Amtrak/National R.R. Passenger Corp.*, 400 F. Supp. 2d 612, 623 (S.D.N.Y. 2005) (same). As the Second Circuit has explained, the "statute plainly is designed to protect rehabilitated or rehabilitating substance abusers from retroactive punishment by

8

employers," not current users. *Teahan v. Metro-North Commuter R.R. Co.*, 951 F.2d 511, 518 (2d Cir. 1991).  Ordinarily, whether an employee falls under this so-called "current user" provision of the Act presents a question of fact that is dependent on  "whether the employee's substance abuse problem is severe and recent enough so that the employer is justified in believing that the employee is unable to perform the essential duties of his job." *D'Amico v. City of New York*, 132 F.3d 145, 150 (2d Cir. 1998) (quoting *Teahan*, 951 F.2d at 520).

In the alternative, the USPS contends that even if Mr. Basso is not exempt under the current user provision, he has failed to demonstrate that his disability substantially limits one or more of his major life activities.  *See* Def.'s Mem. [doc. # 46] at 11.  As the Second Circuit has stated, an individual's status as an alcoholic does not equate to a *per se* disability; rather, the individual "must demonstrate [not only] that he . . . was actually addicted to drugs or alcohol in the past, [but also] that this addiction substantially limits one or more of his . . . major life activities." *Regional Econ. Cmty. Action Program, Inc.*, 294 F.3d at 47 (quoting *Buckley v. Consolidated Edison Co.*, 127 F.3d 270, 274 (2d Cir. 1997)); *see also Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 147 (2d Cir. 2002) (discussing the Act's "major life activity" requirement).  For Mr. Basso to show a substantial impairment of the life activity of working, for example, he would need to present evidence that he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i).  An inability to perform a single, particular job cannot constitute a substantial limitation of the major life activity of working.  *See id.*; *Muller v. Costello*, 187 F.3d 298, 313 (2d Cir. 1999).  Moreover, he might establish a substantial impairment by demonstrating that his alcoholism "substantially limit[s] [his] ability to live independently" and thus, "constitutes a

9

substantial limitation on [his] ability to care for [himself]." *See Regional Econ. Cmty. Action Program*, 294 F.3d at 47 (quotation marks omitted).  However, the USPS argues that Mr. Basso has offered no evidence to support a finding that his alcoholism substantially limits a major life activity. *See* Def.'s Mem. [doc. # 46] at 11-14.  *Cf. McCormack v. LIRR*, 03 Civ. 6597, 2006 WL 490032 (S.D.N.Y. Feb. 28, 2006) (in ADA case, chronicling how plaintiff's epilepsy and seizures substantially limited his ability to work).

Mr. Basso disputes the applicability of the current user provision, asserting that he has exhibited no egregious behavior and that it was his attendance at an alcohol treatment program, and not his current use of alcohol, that prevented him from performing his job responsibilities on January 23 and 24, 2004.  *See* Pl.'s Opp'n [doc. # 57] at 3-4.  Mr. Basso further argues that the Postmaster General has acknowledged that his alcoholism is a "long-standing addiction which is proving to be a life-long struggle." *Id.* at 3.  Mr. Basso claims that his alcoholism has substantially limited his ability to perform a broad range of jobs because it has interfered with "his relationship with co-workers and supervisors," "his ability to live life in a normal manner as he must deal with his battle against alcohol every day," and "his ability to take care of himself." *Id.*  Notably, however, Mr. Basso does not cite to any evidence in the record to support his position that his alcoholism is "not a temporary limitation on a major life activity, but a substantial limitation on [his] life activities." *Id.*

Each of the USPS's arguments casts doubt on Mr. Basso's ability to establish his *prima facie* case.  Nevertheless, the Court need not decide those issues, because even assuming – without deciding – that Mr. Basso has made out his *prima facie* case, he has not satisfied his burden of showing that the USPS's stated reason for his termination was false and that the real reason was

unlawful discrimination.

**B.**

The express terms of the LCA make clear that Mr. Basso was not allowed to have more than five unscheduled absences in a year or more than three unscheduled absences in a six-month period. Unauthorized absences may constitute a legitimate and nondiscriminatory reason for termination. *See, e.g.*, *Sedor v. Frank*, 42 F.3d 741, 746-47 (2d Cir. 1994) (holding plaintiff's failure to obtain authorization and document absences did not constitute a violation of the Rehabilitation Act); *Mayo v. Columbia Univ.*, No. 01 Civ. 2002, 2003 WL 1824628, at *6-7 (S.D.N.Y. Apr. 7, 2003) (collecting LCA-based termination cases); *Glover v. City Univ. of New York*, No. 96 Civ. 7961, 1997 WL 411443, at *4 (S.D.N.Y. July 18, 1997) (finding no discrimination where plaintiff failed to properly document his absences); *Woolcott v. E.I. Dupont De Nemours & Co., Inc.*, No. 95 Civ. 0721, 1997 WL 251475, at *4-5 (W.D.N.Y. Apr. 29, 1997) (holding defendant satisfied its burden where it terminated plaintiff for violating his LCA).

However, if the excessive absences are caused by the employee's alcoholism, an employer may not be able to satisfy its burden in demonstrating a legitimate, nondiscriminatory reason for terminating its employee. *See Teahan*, 951 F.2d at 516-17. For example, in *Teahan*, the employee attributed his excessive absences to his alcoholism. *See id.* at 514. In analyzing his Rehabilitation Act claim, the Second Circuit addressed the employee's alcoholism as the asserted basis of his excessive absenteeism, and held that "[i]f only a small percentage of [the plaintiff's] absences can be shown to have been 'caused' by his alcoholism, and a sufficiently great number of absences are not so caused, such would provide ground for [his employer] to terminate [him] as not prompted solely by reason of his handicap." *Id.* at 517. "If the employer can show that its decision was

11

motivated at least in part by a factor other than the plaintiff's disability, the Rehabilitation Act claim must be rejected. . . . Thus, only if the only reason for the conduct was the disability could the employee be said to have been discharged *solely* by reason of his disability." *Sedor*, 42 F.3d at 746 (quotation marks omitted) (emphasis in original).

Here, unlike the plaintiff in *Teahan* who claimed that his excessive absenteeism was caused by his alcoholism, Mr. Basso asserts that he was absent for reasons wholly unrelated to his alcoholism on seven days spanning four months in 2003: September 30, for impingement syndrome; October 27, 28, 29, 30 and 31 for bronchitis; and December 27, for subluxation of the knee. The USPS classified these absences as non-FMLA protected, unscheduled absences. As such, Mr. Basso was in violation of paragraphs 9h and 17 of his LCA. Even if upon a retrospective review, the USPS was wrong in its assessment of these absences, that would still not undermine its conclusion that Mr. Basso had violated the attendance requirements of his LCA and should, therefore, be terminated in accordance with the LCA. There is no indication that the USPS believed at the time of Mr. Basso's termination that these unscheduled absences were FMLA-protected and it therefore had a legitimate and nondiscriminatory reason for terminating Mr. Basso even if its classifications were ultimately erroneous.[3] *See Golson-El v. Runyon*, 812 F. Supp. 558, 560 (E.D. Pa. 1993) (Defendant can "point to behavior that is not causally related to alcoholism – plaintiff's failure to maintain an attendance record within the parameters of the [LCA] – as the reason for the termination."). Therefore, without

---

[3] As discussed later in this decision, the Court concludes that these absences were not FMLA-protected and thus, that Mr. Basso had enough absences to support the USPS's action to terminate him. *See infra* Part IV. Mr. Basso does not contest that he would have been in violation of his LCA as of his fourth unscheduled absence on October 29, 2003 if his absences were properly determined to be non-FMLA absences. Def.'s Mem. [doc. # 46] at 18; Pl.'s Opp'n [doc. # 57] at 6. Mr. Basso has never argued that his five absences in October 2003 must be considered as a single absence under the terms of his LCA.

even deciding whether the USPS properly determined that Mr. Basso was in violation of paragraph 9 of his LCA for substance abuse-related conduct or deficiencies, its termination of Mr. Basso under paragraph 17 of the LCA for his other unscheduled and non-alcohol related absences constituted a legitimate and nondiscriminatory reason for his termination.

Mr. Basso contests the two reasons the USPS provided for terminating him – (1) failure to comply with paragraph 9e of his LCA in that he exhibited "further substance abuse-related misconduct" or "substance abuse-related performance deficiencies" and (2) failure to comply with attendance requirements under paragraph 17 of his LCA. *See* Pl.'s Opp'n [doc. # 57] at 5-7. He does so principally based on his claim that his absences on January 23, 2004 and January 24, 2004 were for substance abuse treatment, not substance abuse-related misconduct or performance deficiencies. But even if the Court accepts Mr. Basso's claims regarding his January 23 and 24 absences, he has still not produced sufficient evidence from which a rational jury could conclude that the USPS's asserted reason for terminating him was false, and that the real reason for his termination was unlawful disability discrimination. The reason is that Mr. Basso had more than enough absences in September, October and December– which even he says are non-alcohol-related – to exceed the maximum number of permitted unscheduled absences and to justify the USPS's conclusion that he had violated the terms of his LCA, which provided Mr. Basso with his last chance to keep his job.

Because the Court concludes that the evidence would not allow a rational juror to find that the USPS terminated Mr. Basso solely on the basis of his alcoholism, the Court grants summary judgment to the Postmaster General on Count One of the Amended Complaint [doc. # 21]. *See Teahan*, 951 F.2d at 516 ("The 'solely by reason of' inquiry is designed to weed out § 504 claims where an employer can point to conduct or circumstances that are causally unrelated to the plaintiff's

handicap."); *Mayo*, 2003 WL 1824628, at * 5 ("[P]laintiff must 'produce . . . sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [discrimination] was the real reason for the discharge.'" (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996))).

## IV. Family and Medical Leave Act

Mr. Basso's second claim is that the USPS unlawfully interfered with his rights under the FMLA, 29 U.S.C. § 2601 *et seq.*, which provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA.[4] 29 U.S.C. § 2615(a)(1).   In addition to its well-known family care provisions, the FMLA provides a certain amount of job security to employees who are absent or take leave for a serious health condition or a chronic serious health condition.[5] *See* 29 U.S.C. § 2601 (finding that

---

[4] Although Mr. Basso asserts an interference and not a retaliation claim, *see Sista*, 445 F.3d at 175-76, he contends that the USPS's interference with his FMLA rights put him in violation of his LCA, and therefore resulted in his termination.  The FMLA provides that an employer cannot "use the taking of FMLA leave as a negative factor in employment decisions, such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.220(c); 29 U.S.C. § 2615.  However, "FMLA is not a shield to protect employees from legitimate disciplinary action by their employers if their performance is lacking in some manner unrelated to their FMLA leave." *Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 429 (S.D.N.Y. 2004) (quotation marks omitted).  Therefore, "failure to abide by the terms of the [LCA] is a legitimate grounds for terminating an employee on FMLA leave." *Id.* at 432.

[5] A "serious health condition" means "an illness, injury, impairment, or physical or mental condition that involves (1) inpatient care . . . ; or (2) continuing treatment by a health care provider." 29 C.F.R. § 825.114(a).  Continuing treatment by a health care provider includes "(i) a period of incapacity (i.e., inability to work . . . due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves: (A) [t]reatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services . . . under orders of, or on referral by, a health care provider; or (B) [t]reatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider." 29 C.F.R. § 825.114(a)(2)(i). A "chronic serious health condition" is one that "(A) [r]equires periodic visits for

"there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods"); *see also id.* § 2612(a)(1)(D).  To establish that the USPS unlawfully interfered with his FMLA rights, Mr. Basso must show each of the following:  (1) he is a FMLA-eligible employee; (2) the USPS is an employer under the FMLA; (3) he was entitled to take FMLA leave; (4) he gave notice of his intention to take leave; and (5) the USPS denied him the benefits to which he was entitled under the FMLA.  *See id.*; *Robertson*, 400 F. Supp. 2d at 626; *Geromanos*, 322 F. Supp. 2d at 427; *Mayo*, 2003 WL 1824628, at *7.

The USPS acknowledges that Mr. Basso, as a USPS employee, has a right of action under the FMLA.  *See* Def.'s Mem. [doc. # 46] at 20; *see also Sista*, 445 F.3d at 174 (noting that FMLA creates a private right of action for money damages and equitable relief against any employer that interferes with its employee's FMLA rights).  The USPS also concedes for purposes of this motion that the USPS is an employer as defined under the FMLA and that Mr. Basso is a FMLA-eligible employee. *See id.* at 21.  At oral argument, the USPS clarified that its motion for summary judgment as to Mr. Basso's interference claim is based on (1) Mr. Basso's failure to give notice of his intent to take FMLA leave for any of the disputed absences, and (2) his inability to take FMLA leave for the January 2004 absences because of his alcohol use.  The USPS argues that it cannot have interfered with or denied Mr. Basso his rights under the FMLA because the USPS lacked notice that Mr. Basso intended to take FMLA leave, and moreover, because Mr. Basso had no right to FMLA leave on any of the disputed days.  Mr. Basso rejoins that he was entitled to FMLA leave for each of his absences and that he provided the USPS with adequate notice of his intent to take FMLA leave

---

treatment by a health care provider . . .; (B) continues over an extended period of time . . . ; and (C) may cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.)."  29 C.F.R. § 825.114(a)(2)(iii).

along with supporting medical certification for his absences.  He claims that his actions triggered a duty on the part of the USPS to inquire further of him if the USPS needed more information to determine whether his absences qualified as FMLA leave.

The pertinent aspects of the FMLA regulations regarding an employee's requirement to furnish notice to an employer of his intent to take FMLA leave for an unforeseeable absence are as follows:

> (a) When the approximate timing of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case.  It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible. . . .

> (b) The employee should provide notice to the employer in person or by telephone . . . .  The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed.  The employer will be expected to obtain any additional required information through informal means.  The employee . . . will be expected to provide more information when it can readily be accomplished as a practical matter, taking into consideration the exigencies of the situation.

*See* 29 C.F.R. § 825.303.  An employer is expressly authorized to require its employee "to comply with the employer's usual and customary notice and procedural requirements for requesting leave." 29 C.F.R § 825.302(d).

In addition, an employer may require that a request for leave be supported by certification issued by the employee's health care provider, which is sufficient so long as it states the following: "(1) the date on which the serious health condition commenced; (2) the probable duration of the condition; (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition; [and] (4) . . . a statement that the employee is unable to perform the

functions of the position of the employee."  29 U.S.C. § 2613; *see also* 29 C.F.R. § 825.306.

Department of Labor ("DOL") Form WH-380 satisfies FMLA's certification requirement and may

be used by an employer for FMLA purposes.  *See* 29 C.F.R. § 825.306.  However, "[i]n all instances

the information on the form must relate only to the serious health condition for which the current

need for leave exists." *See id.*  The FMLA regulations make clear that not all health-related absences

are covered under the Act; "[o]rdinarily, unless complications arise, the common cold, the flu, ear

aches, upset stomach, minor ulcers, headaches other than migraine, and routine dental or orthodontia

problems . . . are examples of conditions that do not meet the definition of a serious health condition

and do not qualify for FMLA leave."  29 C.F.R. § 825.114(c).

In a case such as this where the employer argues that it lacked sufficient notice of an

employee's intent to take FMLA leave, and thus did not have a duty to inquire further, courts have

held that the "critical question is whether the information imparted to the employer is sufficient to

reasonably apprise it of the employee's request to take time off for a serious health condition." *See,*

*e.g., Garraway v. Solomon R. Guggenheim Found.*, 415 F. Supp. 2d 377, 383 (S.D.N.Y. 2006)

(quoting *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995)); *Ode v. Mount Sinai*

*Med. Ctr.*, No. 04 Civ. 9632, 2006 WL 1711508, at *5 (S.D.N.Y. June 22, 2006) (quoting *Walton*

*v. Ford Motor Co.*, 424 F.3d 481, 486 (6th Cir. 2005)).  An employee need not expressly notify his

employer that he is taking leave under the FMLA; it suffices that the employee supply a FMLA-

qualifying basis for his leave.  *See Brown v. The Pension Bds., United Church of Christ*, 488 F.

Supp. 2d 395, 408-409 (S.D.N.Y. 2007).  "When it comes to the timing of the notice and its content,

what is practicable . . . will depend upon the facts and circumstances of each individual case."  *Ode*,

2006 WL 1711508, at *5 (quotation marks and brackets omitted).

That said, the FMLA does not require an employer to be "clairvoyant." *Brown*, 488 F. Supp. 2d at 409.  Thus, if the employee fails to provide its employer with the required notice, "the employer can deny leave even if the employee has a serious health condition." *Phillips v. Quebecor World RAI, Inc.*, 450 F.3d 308, 311 (7th Cir. 2006); *see also* 29 C.F.R. § 825.08(a)(1) ("An employee giving notice of the need for unpaid FMLA leave must explain the reasons for the needed leave so as to allow the employer to determine that the leave qualifies under the Act.  If the employee fails to explain the reasons, leave may be denied.").  Furthermore, because FMLA leave applies only to a "serious health condition" or "chronic serious health condition" as defined under 29 C.F.R. § 825.114, an employee's mere reference to being sick "does not suggest to the employer that the medical condition might be serious or that the FMLA otherwise could be applicable." *Phillips*, 450 F.3d at 312 (quotation marks omitted); *see also Brown*, 488 F. Supp. 2d at 409 ("Merely calling in sick . . . is insufficient to put a company on notice that an employee is requesting leave that may be eligible under the FMLA.").  This is so because "[r]equiring employers to determine whether leave is covered by the FMLA every time an employee was absent because of sickness would impose a substantial and largely wasted investigative burden on employers." *Phillips*, 450 F.3d at 312 (quotation marks omitted).  Accordingly, the "FMLA does not require employers to play Sherlock Holmes, scanning an employee's work history for clues as to the undisclosed, true reason for an employee's absence." *See de la Rama v. Illinois Dep't of Human Servs.*, 541 F.3d 681, 687 (7th Cir. 2008); *Golden v. New York City Dep't of Envtl. Prot.*, No. 06 Civ. 1587, 2007 WL 4258241, at *2 (S.D.N.Y. Dec. 3, 2007) (holding that an employer's knowledge that its employee "suffered from a chronic medical condition did not relieve [the employee] of the duty to notify [its employer] 'as soon as practicable' that an individual absence was due to this condition").

18

With these principles in mind, the Court will examine each of Mr. Basso's disputed absences to assess whether there are genuine issues of material fact regarding the adequacy of the notice he provided to the USPS and whether Mr. Basso's actions triggered the USPS's duty to inquire further about his intent to take, or his asserted basis for, FMLA leave.

### A.   September 20, 2003: Impingement Syndrome

On September 20, 2003, Mr. Basso was scheduled to report for eight hours of overtime. However, he did not show up for work.  *See* Def.'s Local Rule 56(a)(1) Stmt. [doc. # 47] at 4, ¶ 15 [hereinafter Def.'s 56.1]; Pl.'s Local Rule 56(a)(2) Stmt. [doc. # 58] at 2, ¶ 15 [hereinafter Pl.'s 56.2]. On the basis of a PS Form 3971 generated that day, Mr. Basso claims that he called in to inform the USPS of his absence.  *See* Kiluk Aff. [doc. # 42] Ex. 9.  The remarks in the PS Form 3971 reflect that Mr. Basso did not request FMLA leave during his call.  *See id.* ("Not FMLA"); *see also* Def.'s 56.1 [doc. #47] Ex. O at 31 (explaining that if Mr. Basso requested FMLA leave during his call, the PS Form 3971 would say "FMLA," not "Not FMLA").  Mr. Basso does not dispute that he did not specifically request FMLA leave during any call to the USPS on September 20, 2003.  *See* Pl.'s 56.2 [doc. # 58] at 2, ¶ 15.

In addition, Mr. Basso supplied the USPS with a doctor's note from Evan Rashkoff, M.D., dated September 22, 2003.  The note stated as follows: "Patient is unable to work 9/20/03.  Dx impingement syndrome." *See* Kiluk Aff. [doc. # 47] Ex. 15.  Nothing further is indicated in the note. *See id.*  Mr. Basso had also submitted a DOL Form WH-380 several months previously, on or about July 10, 2003, from Dr. Rashkoff that indicated that Mr. Basso suffered from chronic arthritis of the knee beginning as of January 2003 and that he may need additional unknown leave depending on his ability to work as a result of any knee inflammation. *See* Def.'s 56.1 [doc. # 47] at 4, ¶ 14; Pl.'s

56.2 [doc. # 58] at 2, ¶ 14; Kiluk Aff. [doc. # 42] Ex. 21.  According to the DOL Form WH-380, Mr. Basso was cleared to perform his job as of July 9, 2003.  *See id.*

Mr. Basso argues that the USPS improperly denied him FMLA leave for his September 20 absence, and citing 29 C.F.R. § 824.305, he contends that the USPS should have instead notified him of his right to submit supplemental medical information before making its FMLA determination. *See* Pl.'s Opp'n [doc. # 57] at 11.  Mr. Basso is mistaken in relying on § 824.305 in support of his position, however, because the USPS's duty to inquire further about his medical certification is triggered only upon its receipt of adequate notice that Mr. Basso sought to take FMLA leave for his September 20 absence.  *See Brown*, 488 F. Supp. 2d at 409 ("*After the employee provides the required notice*, the onus shifts to the employer to inquire further if it needs further information to ascertain whether the leave is FMLA-qualifying." (quotation marks omitted and emphasis added)); *Barnett v. Revere Smelting & Refining Corp.*, 67 F. Supp. 2d 378, 386 (S.D.N.Y. 1999) (adopting the position that "all of the facts and circumstances surrounding the plaintiff's request for time off were to be considered" in determining whether there was sufficient notice under the FMLA).

Mr. Basso's submission of a doctor's note attributing his one-day absence to "impingement syndrome," without more, was insufficient to notify the USPS of his intent to take FMLA leave for an otherwise serious health condition or chronic serious health condition.  *See, e.g.*, *de la Rama*, 541 F.3d at 687 ("[T]he notice must succeed in alerting the employer to the seriousness of the health condition."); *Brown*, 488 F. Supp. 2d at 409 (holding that calling in sick and providing vague doctors letters were insufficient to provide notice of employee's intent to take FMLA leave).  As of September 20, the only DOL Form WH-380 that Mr. Basso had supplied to the USPS was for chronic arthritis of the knee.  The USPS was not required to intuit the seriousness of Mr. Basso's

20

alleged condition, and there is no evidence to indicate that Mr. Basso or his doctor in any way attempted to explain the seriousness of the words "impingement syndrome" or to link it to any medical certification on file regarding Mr. Basso's chronic arthritis of the knee. *See* 29 C.F.R. § 825.306 ("In all instances the information on the form must relate only to the serious health condition for which the current need for leave exists."). *Cf. Barnett*, 67 F. Supp. 2d at 386-87 (refusing to find notice because of conflicting testimony and because the employee's conversations with his employer made it aware of "recurring symptoms that suggested a potentially serious condition" and the employee specifically mentioned these symptoms on the mornings he called in sick). Indeed, had the USPS attempted to discern the meaning of "impingement syndrome," it would have discovered that it is "a common condition affecting the shoulder often seen in aging adults [and] . . . closely related to shoulder bursitis and rotator cuff Tendonitis." *See* Pl.'s Mem. Supp. Mot. Summ. J. [doc. # 43] at 7 (citing WebMD). Thus, the diagnosis did not relate to Mr. Basso's certification for "chronic arthritis of the knee," the only evidence he offers that was on file at the time of this absence.

Mr. Basso also points to another DOL Form WH-380 signed by Evan Rashkoff, M.D., on January 29, 2004 and submitted by Mr. Basso to the USPS on February 2, 2004. *See* Kiluk Aff. [doc. # 42] Ex. 16. This form indicates that Mr. Basso was suffering from "[t]endonitis – chronic shoulder pain" and "knee arthritis" that commenced in early-December 2002. *See id.* The form references an absence from January 19-20, 2004, and states that Mr. Basso's "[t]ime out of work and inability to work will depend on frequency of inflammation of shoulder." *Id.* It further reflects that that Mr. Basso was placed on a continuing treatment regimen of prescription drugs and would not work overtime when his condition became inflamed. *See id.* As the Court has already noted, however, "[i]t is expected that an employee will give notice to the employer within no more than

one or two working days of learning of the need for leave" for an unforeseeable absence.  29 C.F.R. § 825.303(b).  Moreover, "[a]dequate notice requires that sufficient information be imparted to the employer to reasonably apprise it of the employee's request to take leave for a serious health condition."  *See Roff v. Low Surgical & Med. Supply, Inc.*, CV-03-3655, 2004 WL 5544995, at *9 (E.D.N.Y. May 11, 2004).

Although Mr. Basso's DOL Form WH-380 was prepared by the same physician as his September 22, 2003 doctor's note, Mr. Basso did not submit this form until over four months after the USPS had classified his absence as AOT.  *See de la Rama*, 541 F.3d at 687 (granting employer summary judgment on employee's FMLA claim for July and August 2004 where employee called out sick but did not provide documentation of her serious health condition until October 2004).  *But see Barr v. New York City Transit Auth.*, No. 99-CV-7927, 2002 WL 257823, at *7 (E.D.N.Y. Feb. 20, 2002) (denying defendant summary judgment regarding plaintiff's March 1998 absences because plaintiff's FMLA leave request form, submitted in July 1998, certified that she had suffered from a serious medical condition since March 1998).  Under the FMLA regulations, an employee's desire to take leave and the reason for the leave ordinarily must be communicated to the employer within approximately two business days of the employee's return to work, and at a minimum, as soon as is practicable.  *See* 29 C.F.R. § 825.208(e)(1).  In the absence of such notification, "the employee may not subsequently assert FMLA protections for the absence."  *Id.*  Mr. Basso's Form WH-380 was not submitted until many months following his absence and, moreover, despite specifically referencing his recent absences from work, the form did not mention Mr. Basso's September 20 absence.  Instead, it specified a condition different from the one for which he was absent in September.

Given the nature and content of the information that Mr. Basso supplied to the USPS

immediately following his absence, and his delay in submitting any further medical certification that could possibly relate to this condition, a rational juror could not find that the USPS should have known that Mr. Basso intended to take FMLA leave on September 20, 2003. The Court therefore grants the Postmaster General summary judgment on Mr. Basso's FMLA interference claims regarding this absence. For the same reasons, the Court denies Plaintiff summary judgment for this absence.

### B.     October 27, 28, 29, 30, and 31, 2003: Bronchitis

From October 27 to October 31, 2003, Mr. Basso was scheduled to work his regular tour of duty, but called the USPS on each of those five days to state that he was sick and would not be at work. *See* Def.'s 56.1 [doc. # 47] at 4-5, ¶¶ 17, 19, 22; Pl.'s 56.2 [doc. # 58] at 2-3, ¶¶ 17, 19, 22. The PS Form 3971 reflects Mr. Basso did not request FMLA leave for these absences. *See* Kiluk Aff. [doc. # 42] Ex.10 ("Not FMLA"). Mr. Basso does not claim that he specifically requested FMLA leave for these days or that his PS Form 3971 is inaccurate. *See* Pl.'s 56.2 [doc. # 58] at 2-3, ¶¶ 17, 19, 22.

Mr. Basso supplied the USPS with three notes regarding these absences: (1) a note from Dennis J. Gottfried, M.D., dated 10/28/03 that stated "pt was unable to work due to bronchitis and is able to return to work/school on 10/29/03. Pt called on 10/27/03 from boat, could not come in. Came in 10/29/03 and is excused from 10/27/03 thru 10/28/03"; (2) a note from Dennis J. Gottfried, M.D., in different handwriting dated 10/28/03 that stated "pt was unable to work due to bronchitis and is able to return to work/school on 10/29/03. Pt seen 10/28/03, excused from 10/27/03-10/29/03; and, (3) a note from Northwest Connecticut Medical Walk In dated 10/31/03 that stated "Mark Basso was seen here as a patient on 10/31/03 . . . [and] was too ill to work from 10/27/03 thru 10/31/03.

Dx Bronchitis."  *See* Kiluk Aff. [doc. # 42] Exs. 17-19.  Notably, as recited above, on his first day

of absence, Mr. Basso called his doctor from a boat and did not visit the doctor on that day.  The

USPS classified these forty hours of leave as LWOP in lieu of sick leave.  *See* Def.'s 56.1 [doc. # 47]

at 6, ¶ 24; Pl.'s 56.2 [doc. # 58] at 3, ¶ 24.

Mr. Basso argues that his bronchitis qualified as a "serious health condition" because it

involved a period of more than three consecutive calendar days that rendered him unable to work,

*see* 29 C.F.R. § 825.114(a)(2)(i), and that his doctors' notes reflected his inability to work on these

days and thus sufficed to notify the USPS of his intent to seek FMLA leave.  However, simply

because an employee is absent for more than three consecutive calendar days does not automatically

entitle him to FMLA leave. Thus, the definition of a "serious health condition" includes a period of

incapacity of more than three consecutive days *together with* subsequent multiple treatments or

related periods of incapacity.  *See id.*; *Barnett*, 67 F. Supp. 2d at 384.  Therefore, even if (construing

Mr. Basso's evidence in the light most favorable to him) Mr. Basso were incapacitated for more than

three days (including the time while he was on the boat), there is nothing in the record to indicate

that his condition required any follow-up treatment from his doctor.  Once again, therefore, the USPS

would have no reason to consider whether his bronchitis constituted a serious health condition under

the FMLA or whether Mr. Basso was seeking FMLA leave for each of these days.  *See* 29 C.F.R. §

825.114(a); *see also id.* § 825.114(c) (common conditions do not generally qualify as FMLA leave);

*id.* § 825.208(d) (referencing an employee's use of sick leave for bronchitis); *Beal v. Rubbermaid*

*Commercial Prods., Inc.*, 972 F. Supp. 1216, 1225 (S.D. Iowa 1997) (rejecting FMLA coverage for

bronchitis where employee recovered quickly and required no follow-up care).

Moreover, the severity of Mr. Basso's bronchitis is remarkably unclear from his doctor's

notes, especially because Dr. Gottfried's notes state that Mr. Basso was able to return to work on October 29, 2003, *see* Kiluk Aff. [doc. # 42] Ex. 17, or at the very latest, on October 30, 2003, *see id.* Ex. 18.  Of course, Mr. Basso did submit a note to his employer that ultimately excused him for five consecutive calendar days.  *See id.* Ex. 19.  However, even after receipt of these documents on November 2, 2003, the USPS classified Mr. Basso's absence as SWOP.  *See id.* Ex. 10.  The PS Form 3971 documenting these absences specifically states that the absences were not approved for FMLA leave but were instead classified as "SWOP."  *See id.*  Mr. Basso signed this form despite its statement that his absences were not FMLA leave, *see id.*, and there is no evidence in the record to indicate that he objected to this designation or otherwise notified his employer of his intent to take FMLA leave for these five days.  In fact, at his deposition, Mr. Basso indicated that if he had been presented with a PS Form 3971 and had disagreed with its classification, he would have written "RTS, refuse to sign" in the signature space.  *See* Def.'s 56.1 [doc. # 47] Ex. K at 83.

As the FMLA regulations provide, "[i]f there is a dispute between an employer and an employee as to whether paid leave qualifies as FMLA leave, it should be resolved through discussion between the employee and the employer.  Such discussions and the decision must be documented."  29 C.F.R. § 825.208(b).  No such discussion occurred here. This absence of any indication from Mr. Basso that he sought FMLA leave for these absences is particularly noteworthy given Mr. Basso's apparent practice of requesting FMLA leave when he called in to state he would not be reporting to work.  *See, e.g.,* Def.'s 56.1 [doc. # 47] Ex. G (stating Mr. Basso invoked FMLA after not being excused from overtime); *id.* Ex. Y (stating that Mr. Basso phoned work on January 26, 2004 and January 27, 2004 requesting FMLA leave).  Tellingly, he did not do so for these absences.

Given the reason asserted for Mr. Basso's absences and his apparent lack of continuing

25

treatment for his bronchitis, the Court concludes that no rational jury could find that the calls Mr. Basso placed to the USPS on the day of his absences and the doctors' notes he submitted following his absences were sufficient to notify the USPS of his intent to take FMLA leave for October 27, 28, 29, 30 or 31, 2003.   This is especially so because the diagnosis did not on its face qualify as a "serious health condition" under the FMLA and because Mr. Basso did not object to its classification as SWOP, rather than as a FMLA-covered absence.   The Court therefore grants the Postmaster General summary judgment on Mr. Basso's FMLA interference claim relating to his absences in October 2003.   For the same reasons, the Court denies Plaintiff summary judgment for these absences.

### C.   December 27, 2003: Subluxation of the Knee

On December 27, 2003, Mr. Basso was scheduled for eight hours of overtime, but he did not report to work as scheduled.   *See* Def.'s 56.1 [doc. # 47] at 6, ¶ 25; Pl.'s 56.2 [doc. # 58] at 3, ¶ 25. On the basis of a PS Form 3971 generated that day, Mr. Basso asserts that he called in to inform his employer of his absence.   *See* Kiluk Aff. [doc. # 42] Ex. 11.   The form reflects that Mr. Basso did not expressly request FMLA leave for this absence.   *See id.* ("Not FMLA").   Mr. Basso does not dispute that he did not specifically request FMLA leave during any call to the USPS on December 27, 2003.   *See* Pl.'s 56.2 [doc. # 58] at 3, ¶ 25.   Mr. Basso submitted a doctor's note from Evan Rashkoff, M.D., dated December 29, 2003, that stated "Patient is unable to work 12/27/03.   Dx subluxation knee."   *See* Kiluk Aff. [doc. # 42] Ex. 20.   Nothing further is indicated in the note.   *See id.*

As he did for his September 20 absence, Mr. Basso argues that the USPS had a duty under 29 C.F.R. § 825.305 to inform him if it found his medical certification was insufficient, thereby

allowing him an opportunity to submit supplemental documentation. Again, however, Mr. Basso's reliance on this regulation is misplaced because the USPS had to receive adequate notice of his intent to take FMLA leave before it was required to request any sort of supplemental certification from him. *See Brown*, 488 F. Supp. 2d at 409. Although Mr. Basso's July 10, 2003 DOL Form WH-380 – reflecting his "chronic arthritis of the knee" was on file at the time of this absence – Dr. Rashkoff's note makes no reference to this serious health condition. *See de la Rama*, 541 F.3d at 687 (holding an employer has no duty under the FMLA to search its employee's work history to uncover the true reason for an absence); *Golden*, 2007 WL 4258241, at *2 (holding an employer's knowledge of its employee's chronic medical condition does not relieve an employee of his duty to inform the employer "as soon as practicable" that the individual absence results from this condition).

Furthermore, Mr. Basso has offered no evidence to indicate that he notified the USPS of his intent to take leave for this one-day absence, and the Court sees no reason that the USPS would equate "subluxation knee" with a "chronic serious health condition" on the basis of the doctor's note that Mr. Basso submitted. In addition, the PS Form 3971 for this absence reflects that Mr. Basso initialed that he understood that his absence was designated as AOT, not FMLA leave. *See Kulik* Aff. [doc. # 42] Ex. 11. The form does not contain Mr. Basso's "RTS" designation, *see* Def.'s 56.1 [doc. # 47] Ex. K at 83, and there is nothing in the record to indicate that Mr. Basso objected to this designation so as to put the USPS on notice that he was seeking medical leave that was somehow related to his arthritis. *See* 29 C.F.R. § 825.208(b).

Lastly, the later-submitted February 2, 2004 DOL Form WH-380 signed by Dr. Rashkoff indicates that Mr. Basso suffered from "[t]endonitis - chronic shoulder pain" and "knee arthritis" and that these conditions commenced in December 2002 and rendered Mr. Basso unable to work on

January 19, 2004 and January 20, 2004.  *See* Kulik Aff. [doc. # 42] Ex. 16.  However, the form

makes no mention of Mr. Basso's recent absence on December 27, 2003, which Mr. Basso now

asserts (without any medical testimony) originated from the same condition.  *See id*; *see also Brown*,

488 F. Supp. 2d at 409 (holding that calling in sick and providing vague doctors' letters were

insufficient to provide notice of employee's intent to take FMLA leave).  In the absence of timely

notification to the USPS of his absence for a FMLA-qualifying reason, the USPS's duty to inquire

further about the absence was not triggered and Mr. Basso may not now assert FMLA's protections.

*See* 29 C.F.R. § 825.208(e)(1).

On the basis of the evidence set forth in the record, the Court concludes that no rational jury

could find that the USPS had adequate notice of Mr. Basso's intent to take FMLA leave on December

27, 2003.  Therefore, the Court grants the Postmaster General summary judgment on Mr. Basso's

FMLA interference claim relating to the December 27 absence. For the same reasons, the Court

denies Plaintiff summary judgment as to this absence.

### D.    January 23, 2004 and January 24, 2004: Substance Abuse Treatment

On January 23, 2004, Mr. Basso was scheduled for his normal shift, but failed to report to

work as scheduled. *See* Def.'s 56.1 [doc. # 47] at 6, ¶ 28; Pl.'s 56.2 [doc. # 58] at 4-5, ¶ 28.[6]  Mr.

Basso notified his supervisor, Russell Jud, that he would be absent that day.  *See id.*   The USPS

contends that Mr. Basso told Mr. Jud that he had been drinking and was at UCONN Medical Center.

*See* Def.'s 56.1 [doc. # 47] at 6, ¶ 28.  Mr. Basso claims that his conversation with Mr. Jud on

---

[6]  The Court questions whether these absences are properly classified as unforeseeable under the
FMLA and Mr. Basso's LCA. Mr. Basso presumably scheduled his appointment at UCONN Medical
Center in advance of going there, but the record is silent as to when he made this appointment and
the parties do not adequately address this issue.  Thus, without deciding the matter, the Court
assumes for purposes of this motion that these two days were unforeseeable, unscheduled absences.

January 23 reflected that he had gone to UCONN Medical Center for alcohol rehabilitation as a result of a return to drinking that was precipitated by certain personal problems that included his father being ill and his ex-girlfriend getting married.  *See* Pl.'s 56.2 [doc. # 58] at 4, ¶ 28; *see also* Def.'s 56.1 [doc. # 47] Ex. CC.  Mr. Basso's January 23 absence was classified as AWOL, and the handwritten notes on his PS Form 3971 for this date further state that Mr. Basso's absence was "disapproved [for] failure to call timely; employee reported being drunk." *See* Kiluk Aff. [doc. # 42] Ex. 12.

On January 24, 2004, Mr. Basso was scheduled for eight hours of overtime, but failed to report for his shift.  *See* Def.'s 56.1 [doc. # 47] at 7, ¶ 30; Pl.'s 56.2 [doc. # 58] at 3, ¶ 30.  On the basis of his recollection and the PS Form 3971 generated on January 26, 2004, Mr. Basso asserts that he called in to inform the USPS of this absence.  *See* Kiluk Aff. [doc. # 42] Ex. 13.  If Mr. Basso called, he did not expressly request FMLA leave.  *See id.* ("Not FMLA").  Mr. Basso does not claim that he requested FMLA leave during any call made to the USPS on January 24.  *See* Pl.'s 56.2 [doc. # 58] at 3, ¶ 30.  The USPS classified this absence as AOT.

The USPS mailed Mr. Basso a letter on January 26, 2004 that directed him to report for a Pre-Disciplinary Interview ("PDI") on January 28, 2004.  *See* Def.'s 56.1 [doc. # 47] Ex. BB.  The USPS notified Mr. Basso that he was required to provide "any and all documentation" that would justify his absences since January 23, 2004.  *See id.*  The PDI letter also referenced a January 26, 2004 absence for which Mr. Basso had called in on January 26 and stated that he would be absent on FMLA leave.  *See id.*  Mr. Basso appeared for his PDI, and stated that he was absent on January 23, 2004 because he was at UCONN Medical Center for alcohol rehabilitation and absent on January 24, 2004 because he had been drinking.  *See id.* Ex. CC.  During his interview, Mr. Basso did not

attempt to invoke FMLA leave for his absences.  *See id.* Ex. FF ("You also made no reference to the absences of 1/23 & 1/24 as being FMLA during your [PDI].").  Instead, Mr. Basso submitted a letter dated January 23, 2004 from UCONN's Network Support Project.  The letter stated that Mr. Basso attended an intake evaluation that day.  He also supplied another letter dated January 28, 2004 that stated he had completed a diagnostic evaluation and comprehensive assessment and would soon begin therapy treatment.  *See* Def.'s 56.1 [doc. # 47] Ex. II (filed under seal).  On February 2, 2004, Mr. Basso submitted a DOL Form WH-380 that stated that he suffered from alcohol abuse and dependence and that he was incapacitated for duty on January 23 and January 24.  *See* Kiluk Aff. [doc. # 42] Ex. 22.  The form further stated that Mr. Basso had begun participating in a structured alcohol treatment program at UCONN Medical Center.  *See id.*

Mr. Basso denies that his absences in late-January 2004 were due to drinking or that any previous drinking had rendered him unable to perform his job functions on those days.  Rather, he attributes his absences to substance abuse treatment.  At his deposition, Mr. Basso testified that he sought substance abuse treatment on January 23 because he was "so disgusted and despondent with [himself] that [he] had picked up the alcohol after being so good for so long . . . [and he] wanted to correct the deficiency right there, stop it before it got out of hand."  *See* Def.'s 56.1 [doc. # 47] Ex. K at 113.  According to Mr. Basso, he drank from the evening of January 22 into the early morning of January 23, went to bed, and then awoke and went directly to UCONN Medical Center for a morning appointment.  *See id.* at 113-14.  He was scheduled to begin work at 1:00 p.m. that afternoon, but did not call his supervisor until approximately 3:25 p.m., at which time Mr. Basso informed the USPS that he was at UCONN Medical Center.  *See* Kiluk Aff. [doc. # 42] Exs. 4 and 12.  At his PDI, Mr. Basso stated that he did not report for work because he had been drinking.  *See*

Def.'s 56.1 [doc. # 47] Ex. CC.  Based on Mr. Basso's statements, the USPS attributes his absences to alcohol use and rejects his assertion that he was being treated on those dates, as the term "treatment" is defined under FMLA.  Thus, the USPS argues that Mr. Basso was not entitled to take FMLA leave for these two days.

The FMLA regulations explicitly state that "[s]ubstance abuse may be a serious health condition if the conditions of [29 C.F.R. § 825.114] are met."  29 C.F.R. § 825.114(d).  However, "absence because of the employee's use of the substance, rather than for treatment, does not qualify for FMLA leave."  *Id.*; *see also Darst v. Interstate Brands Corp.*, 512 F.3d 903, 909 (7th Cir. 2008) ("[A] worker suffering from alcohol or substance addiction is entitled to FMLA leave only for incapacity cause by treatment and not for the incapacity caused by the addiction itself.").   It must be the treatment that renders the employee unable to work.  *See Darst*, 512 F.3d at 911. Treatment is defined under the FMLA to include "examinations to determine if a serious health condition exists and evaluations of the condition."  *See* 29 C.F.R. § 825.114(b).  Calling to make an appointment is not "treatment."  *Darst*, 512 F.3d at 911 (granting summary judgment because plaintiff offered no evidence that he was being treated, or even evaluated for treatment, on the three days immediately preceding his inpatient hospitalization for alcoholism).

Having considered the record in its entirety and construing all evidence in the light most favorable to Mr. Basso, the Court concludes that there is a genuine issue of material fact as to whether Mr. Basso was incapacitated for work on January 23, 2004 and January 24, 2004 as a result of alcohol use, as the USPS contends, or as a consequence of alcohol treatment, as Mr. Basso alleges. There is certainly evidence that Mr. Basso was drinking leading up to these absences.  *See* Def.'s 56.1 [doc. # 47] Ex. II (filed under seal).  Moreover, Mr. Basso stated that he had resumed drinking.

However, much of this same evidence suggests that if Mr. Basso had returned to drinking, it did not necessarily affect his work performance, and moreover, that he had nevertheless sought treatment and may have been undergoing the initial stages of such treatment in late-January 2004.  In addition, Mr. Basso has offered evidence that he stopped drinking in the early hours of January 23, presented himself for admission to UCONN's program later than morning, and was evaluated and later accepted into the program on January 28.  True, no actual treatment may have occurred on those dates, but treatment could not occur unless and until he was evaluated and determined to be an appropriate candidate for the UCONN program.  Finally, the recollections of the only parties to Mr. Basso's late-January phone calls – Mr. Basso and his supervisor, Mr. Jud – are unclear at best.  *See* Def.'s 56.1 [doc. # 47] Exs. K (deposition of Mark Basso) and Z (deposition of Russell Jud).

The FMLA regulations provide that substance abuse treatment may qualify as FMLA leave if certain conditions are met, and if the absence is due to treatment rather than alcohol use.  The evidence presents genuine issues of material fact concerning whether the information Mr. Basso imparted to the USPS reasonably apprised it that his absence was for a FMLA-qualifying reason and whether Mr. Basso was incapacitated for work on January 23, 2004 or January 24, 2004 because of alcohol treatment or alcohol use.  The Court therefore denies the Postmaster General summary judgment as to Mr. Basso's FMLA interference claim for these two days.  For the same reason, the Court denies Plaintiff summary judgment as to these two absences.  However, the Court emphasizes that this denial of summary judgment does not affect the Court's determination that Mr. Basso's termination was lawful under both the Rehabilitation Act and the express terms of his LCA.  *See Geromanos*, 322 F. Supp. 2d at 429 ("FMLA is not a shield to protect employees from legitimate disciplinary action by their employers if their performance is lacking in some manner unrelated to

their FMLA leave." (quotation marks omitted)).  Thus, should a jury find that the USPS interfered with Mr. Basso's right to take FMLA leave for these two days, any damages are limited to the provisions of 29 U.S.C. § 2617(a).

## IV.

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Summary Judgment [doc. # 41] in its entirety and GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment [doc. # 45].  Postmaster General Potter has also moved to strike the punitive damages claim from Mr. Basso's Amended Complaint [doc. # 21].  *See* Def.'s Mem. [doc. # 46] at 31-32.  The Court GRANTS the Postmaster General summary judgment with respect to Mr. Basso's punitive damages claim, because Mr. Basso does not dispute the Postmaster General's argument, *see generally* Pl.'s Opp'n [doc. # 57], and because such an award is not available under the FMLA.  *See* 29 U.S.C. § 2617; *Roff*, 2004 WL 5544995 at *10.

In sum, the Court grants judgment to Postmaster General Potter on Counts One and Three of the Amended Complaint [doc. # 21].  The Court also grants the Postmaster General judgment on Count Two insofar as it alleges interference with Mr. Basso's FMLA rights for his absences dated September 20, October 27, 28, 29, 30 and 31, and December 27, 2003.  The Court denies the Postmaster General's request for summary judgment on Count Two to the extent it alleges improper denial of FMLA leave on January 23 and 24, 2004.

The Court will issue a separate scheduling order for the trial of this case.

IT IS SO ORDERED.


/s/ _____Mark R. Kravitz_____
United States District Judge


**Dated at New Haven, Connecticut: January 9, 2009.**